UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
ALLSTATE INSURANCE COMPANY,  :
ALLSTATE PROPERTY & CASUALTY  :
INSURANCE COMPANY, ALLSTATE  :
IMDEMNITY COMPANY, and  :
ALLSTATE FIRE & CASUALTY  :
INSURANCE COMPANY,  :
  :
        Plaintiffs,  :
  :
    -against-  :
  :
NEW CENTURY PHARMACY INC.,  :
REFILL RX PHARMACY INC, MY RX  :
PHARMACY, INC., DIRECT RX  :
PHARMACY INC, EDUARD ARONOV,  :
KATRIN MATATOV, ALEXANDER  :
SHARAFYAN, BORIS KANDOV,  :
RAFO YAGUDA f/k/a RAFAIL  :
YAGUDEV, FIRST CLASS MEDICAL,  :
P.C., NY MEDICAL ARTS, P.C.,  :
RICHMOND MEDICAL CARE P.C.,  :
GONY MEDICAL SERVICES P.C., LIFE  :
HEALTH CARE MEDICAL P.C., MANI  :
USHYAROV, D.O., AMR A. EL-  :
SANDUBY, M.D., JEAN-PIERRE  :
GEORGES BARAKAT, M.D., TOMAS  :
M. PATTUGALAN, JR., M.D., and  :
RAFAEL ANTONIO DELACRUZ-  :
GOMEZ, M.D.,  :
  :
        Defendants.  :
----------------------------------------------------X

**REPORT AND
RECOMMENDATION**

19 Civ. 5702 (ENV) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

On October 1, 2019, Plaintiffs Allstate Insurance Company, Allstate

1

Property & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Fire & Casualty Insurance Company (collectively, "Allstate" or "Plaintiffs") commenced this insurance-fraud action against nineteen defendants, alleging violations of the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and under New York State common law for fraud and unjust enrichment. See generally Complaint ("Compl."), ECF No. 1.

The Honorable Eric N. Vitaliano, United States District Judge, referred Plaintiffs' motion for a default judgment against Defendants Rafael Antonio Delacruz-Gomez, M.D. and Life Health Care Medical, P.C. for a report and recommendation. All other Defendants have been dismissed. See ECF Nos. 63, 65, 69-70, 80-85, 92-93, 102, 104-06.

For the following reasons, I respectfully recommend that Plaintiffs' motion be granted in part and denied in part.

I.    **BACKGROUND**

A.    **New York's Statutory No-Fault Insurance Regime**

According to the complaint, Defendants were involved in schemes to defraud Allstate through their involvement in the submission of false and/or fraudulent insurance claims on behalf of allegedly injured persons covered by New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. L. §

5101 et seq., and the regulations promulgated thereunder (11 N.Y.C.R.R. § 65 et seq.) (collectively, "the No-Fault laws").

New York enacted the Comprehensive Automobile Insurance Reparations Act to "ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence [and] to reduce the burden on the courts[.]" Med. Soc'y of State of N.Y. v. Serio, 100 N.Y.2d 854, 860 (2003). No-fault insurers reimburse patients for up to $50,000 in personal injury benefits without proof of fault of the other driver. Reimbursements can include all necessary expenses incurred for medical and other professional health services. See N.Y. Ins. L. § 5102(a)(1), (b). To guarantee prompt compensation, the regulatory scheme's "30-day Rule" requires insurers to request any necessary "verification" of a claim within ten days of its receipt and then pay or deny the claim within 30 days. See id. § 5106(a), 11 N.Y.C.R.R. §§ 65-3.5(a), 65-3.8(a), (c).

An insured patient has the right to assign a claim for no-fault insurance benefits to his or her healthcare provider, who in turn may submit requests for payment directly to the insurance company. See 11 N.Y.C.R.R. § 65-3.11(a). New York healthcare providers submitting such claims must use a form, commonly called the "NF-3", that bears the following statutorily prescribed warning: "Any person who knowingly and with intent to defraud any insurance company . . . files [a] statement of claim containing any materially false

3

information, or conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act, which is a crime[.]" N.Y. Ins. L. § 403(d); see 11 N.Y.C.R.R. § 65-3.11(b); Compl. ¶ 131.  In the alternative, healthcare providers may submit claims using a form commonly known as the "CMS-1500 Form," which must bear the same warning.  Compl. ¶¶ 129, 131; N.Y. Ins. L. § 403(d).

Under New York Education Law § 6530, it is professional misconduct for a licensed physician to (a) practice the profession fraudulently, (b) order excessive tests or treatments not warranted by the condition of the patient, or (c) fail to maintain a record for each patient that accurately reflects the evaluation and treatment of the patient.  N.Y. Educ. L. § 6530(1), (32), (35).  It is also unlawful for a physician or chiropractor to directly or indirectly offer, give, solicit, receive or agree to receive any fee or other consideration to or from a third party for the referral of a patient or in connection with the performance of professional services. Id. § 6530(18).  Under New York Public Health Law § 238-A, a practitioner authorized to order pharmacy services may not make a referral for such services to a healthcare provider authorized to provide such services where such practitioner has a financial relationship with such healthcare provider.  N.Y. Pub. Health L. § 238-A(1)(a).  A financial relationship includes a compensation agreement or an arrangement with a healthcare provider that is in excess of fair market value or that

4

provides compensation that varies directly or indirectly based on the volume or value of any referrals or business between the parties.  See N.Y. Pub. Health L. § 238-A(1), (5).

### B.  Factual Background Pertaining To Liability

The following facts, insofar as they are related to questions of liability in this case, are drawn from Plaintiffs' complaint as well as the documents incorporated by reference into the complaint.[1]  Where noted, additional facts are drawn from documents that Plaintiffs submitted in support of their motion, including the declaration of Mr. William Seegull ("Mr. Seegull"), a Special Investigation Unit Field Analyst at Allstate Insurance Company, ECF No. 98 ("Seegull Decl.").

Plaintiffs are Illinois corporations that provide automobile insurance coverage within the State of New York.  See Compl. ¶¶ 27-28.  Defendant Rafael Antonio Delacruz-Gomez, M.D. ("Delacruz-Gomez") resides in and is a citizen of New York and has been licensed to practice medicine in New York since 1991.  Id. ¶¶ 107-08.  Defendant Life Health Care Medical, P.C. ("Life Health Care") is a

---

[1] Rule 10(c) of the Federal Rules of Civil Procedure provides that a pleading includes any statements adopted by reference.  Fed. R. Civ. P. 10(c); see Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (holding that a complaint is deemed to include any written instruments incorporated by reference and documents integral to the complaint); Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (holding that the complaint is deemed to include any documents incorporated by reference).

New York professional service corporation organized to provide professional physician services.  Id. ¶ 110.  According to records on file with the New York Office of the Professions, Delacruz-Gomez is the sole officer, director and shareholder of Life Health Care.  Id. ¶ 111.

Plaintiffs allege that Delacruz-Gomez and Life Health Care (collectively, "Defaulting Defendants") participated in a scheme aimed at seeking and obtaining No-Fault benefit payments that they were not entitled to collect, namely medically unnecessary tests, services and medications, including prescriptions for compounded topical pain medications ("Compounded Products") and other drugs. Id. ¶¶ 1-6.  Plaintiffs also allege Delacruz-Gomez and Life Health Care sought payment from Allstate for patient examinations that Defaulting Defendants knew were not compensable under New York law because the nature and extent of the services actually provided were misrepresented.  Id. ¶¶ 7, 550-77.

Plaintiffs allege that Defaulting Defendants participated in a scheme with Direct Rx Pharmacy Inc. ("Direct Rx") and its owner, Rafo Yaguda f/k/a Rafail Yagudayev ("Yaguda"), for the purpose of generating prescriptions for medically unnecessary and unwarranted Compounded Products to be dispensed and billed for by Direct Rx.  Id. ¶¶ 109, 210-18, 301-26, 379-415.  Delacruz-Gomez allegedly agreed to prescribe medically unnecessary Compounded Products to patients of Life Health Care although the Compounded Products were predetermined by

6

Direct Rx, and were not tailored to the unique needs of the individual patients.  Id. ¶¶ 177-84, 282-300.

When Delacruz-Gomez prescribed Compounded Products, he allegedly used pre-printed labels and stickers, and pre-designed rubber stamps that contained the name of the Compounded Product along with the names and specific formulation of the drugs included in the Compounded Product that were provided by Direct Rx. Id. ¶¶ 178-79.  For example, Delacruz-Gomez allegedly wrote multiple prescriptions for a Compounded Product under the name "Compound 220W" through the use of a rubber stamp.  Id. ¶ 385.  Delacruz-Gomez also routinely prescribed refills of Compound 220W nearly one month after the initial delivery of the first Compound 220W prescription.  Id. ¶¶ 384, 386.  Plaintiffs allege that using a rubber stamp allegedly provided by Direct Rx and prescribing routine refills evidence the collusive relationship between Direct Rx and Delacruz-Gomez, which allegedly existed to maximize the amounts charged to Allstate through medically unnecessary Compounded Products that were billed at unlawfully inflated prices.  Id. ¶¶ 379-415.

These Compounded Products were allegedly prescribed, in many instances, on the same day the patient started treatment without first determining whether other commercially available alternatives could be used prior to prescribing Compounded Products.  Id. ¶¶ 319-22.  Plaintiffs also allege that the letters of

7

medical necessity justifying prescriptions of Compounded Products submitted by Delacruz-Gomez were fraudulent because they were identical to letters submitted by other defendants to Allstate, with the same boilerplate language utilized for a broad range of patients and a variety of different drugs and medications.  Id. ¶¶ 205-16.  Plaintiffs allege that these practices establish Delacruz-Gomez colluded with Direct Rx to wrongly demand and collect No-Fault benefit payments from Allstate for drugs and medications that were unnecessary and unwarranted.  Id. ¶¶ 217-18, 396.  Direct Rx then fraudulently billed Allstate under New York's No-Fault laws for these Compounded Products.  Id. ¶¶ 24-26, 53, 73, 256-326, 379-415.

Plaintiffs further allege that Life Health Care routinely submitted charges to Allstate using high-level Current Procedural Terminology ("CPT") codes even though these examinations were cursory and insubstantial; therefore, they did not meet the necessary criteria for billing under this code.  Id. ¶¶ 560-77.  Plaintiffs allege these examinations set the stage for the prescriptions for Compounded Products, and orders for excessive and unwarranted treatment and services.  Id. ¶¶ 556-59.  Delacruz-Gomez sought and obtained payments from Allstate by representing Life Health Care's eligibility for No-Fault benefits to Allstate.  Compl. ¶¶ 4, 8, 16, 26, 114, 557, 610, 769-77.  Thus, Plaintiffs allege Delacruz-

Gomez intentionally participated in a scheme to use Life Health Care to wrongfully obtain No-Fault benefit payments from Allstate.

As such, Plaintiffs allege Delacruz-Gomez created, or caused to be created, the false or fictitious medical bills on behalf of Life Health Care, and submitted these bills to Allstate using the U.S. Mail.  Id. ¶¶ 610-12, 678-84.  Allstate paid $5,034.14 to Life Health Care based on billing Delacruz-Gomez submitted for patient examinations.  Seegull Decl. ¶ 32, Exh. 2.  Defaulting Defendants also used or caused the use of the U.S. Mail when conducting affairs of the Direct Rx enterprise by submitting prescriptions and supporting letters of medical necessity through the U.S. Mail in support of Direct Rx's No-Fault benefit claims.  Compl. ¶¶ 645-48.  Allstate paid $38,990.27 to Direct Rx based on the prescriptions and documentation in support of Direct Rx's charges for medications dispensed to Life Health Care patients.  Seegull Decl. ¶ 33, Exh. 3.

### C.    Relevant Procedural History

Plaintiffs filed the complaint against all Defendants.  See generally Compl. Plaintiffs filed proofs of service of the summons, civil cover sheet and complaint, among other documents, on Delacruz-Gomez and Life Health Care.  See ECF Nos. 22, 26.  Defaulting Defendants failed to answer or appear in this action, despite being properly served, and Plaintiffs obtained Clerk's certificates of default with respect to them.  See ECF Nos. 53-56.  Plaintiffs filed a motion for default

judgment against Defaulting Defendants and mailed copies of all papers relevant to the Defaulting Defendants, as required by Local Rule 55.2(c).  See ECF Nos. 97-98; E.D.N.Y. Local Civ. R. 55.2(c).  The Honorable Eric N. Vitaliano referred Plaintiffs' motion to the undersigned for a report and recommendation.

## II.   DISCUSSION

### A.   Legal Standard

Fed. R. Civ. P. 55 establishes the procedure to obtain a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993) (citing Fed. R. Civ. P. 55).  First, if a party failed to plead or otherwise defend against an action, the "clerk must enter the party's default."  See Fed. R. Civ. P. 55(a).  "The entry of default is therefore not discretionary."  Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015).  Second, the moving party must apply to the court for a default judgment after the default has been entered, as Plaintiffs have done here.  See Fed. R. Civ. P. 55(b); see also ECF Nos. 97-98.  If the defaulting party still fails to appear or move to set aside the default pursuant to Fed. R. Civ. P. 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b)(2).

A party's default constitutes a concession of all well-pleaded allegations of liability, except for those allegations relating to the amount of damages.  See Fed. R. Civ. P. 8(b)(6); Cement & Concrete Workers Dist. Council Welfare Fund v.

Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The court must conduct an inquiry sufficient to determine the amount of damages to a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see Cement & Concrete Workers, 699 F.3d at 232. This inquiry may be accomplished by evaluating the affidavits and documentary evidence submitted by the plaintiff or by conducting an evidentiary hearing to evaluate the amount of damages to be awarded against a defaulting defendant. See Fed. R. Civ. P. 55(b)(2); Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009) ("Rule 55(b) commits this decision to the sound discretion of the district court.").

A court may not properly enter a default judgment unless it has jurisdiction over the parties against whom the judgment is sought. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011); Sajimi v. City of New York, No. 07 Civ. 3252 (ENV) (MDG), 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011). The non-moving party must have been served with process. A process server's affidavit is prima facie evidence of proper service. See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002). To prove proper service, "the server should disclose enough facts to demonstrate the validity of the service." Charles Alan Wright & Arthur R. Miller, 4B Fed. Prac. & Proc. Civ. § 1130 (4th ed. 2021); see Fed R. Civ. P. 4(l)(1).

Fed R. Civ. P. 4(e)(1) provides that service may be effected in accordance with the service rules of the state where the district is located or service is made. With regard to Life Health Care, New York Business Corporation Law "permits service based on delivery of the summons and complaint to the New York Secretary of State as an agent of the corporation." Trs. of the Local 531 Pension Fund v. Am. Indus. Gases, Inc., 708 F. Supp. 2d 272, 275 (E.D.N.Y. 2010) (citing N.Y. Bus. Corp. L. § 306(b)(1)). Plaintiffs properly served Life Health Care insofar as Plaintiffs delivered the summons and complaint and paid the applicable fee to the Office of the Secretary of the State of New York. See ECF No. 22.

With regard to Delacruz-Gomez, Fed. R. Civ. P. 4(e)(2)(A) states that an individual within this district may be served by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). Here, Plaintiffs served Delacruz-Gomez by delivering the summons and complaint to him at his home address. See ECF No. 26. In addition, Plaintiffs' process server verified that Delacruz-Gomez was not in the military service. Id. Service upon each Defendant in this motion was therefore sufficient.

Defaulting Defendants failed to answer or otherwise respond to the complaint. The grounds for default are therefore clearly established, and there are no grounds for believing the defaults are based on a good-faith mistake or technicality. See LG Cap. Funding, LLC v. Volt Solar Sys., Inc., No. 15 Civ. 1404

12

(KAM) (VMS), 2016 WL 11447845, at *5 (E.D.N.Y. Aug. 15, 2016) (default willful where defendant never responded to complaint or obtained counsel), R&R adopted, 2016 WL 4718014 (Sept. 9, 2016).  Judgment by default may therefore be granted so long as liability and damages are appropriately established.

### B.    Liability

#### 1.    Common Law Fraud

Allstate alleges Defaulting Defendants committed common law fraud (Counts XVI and XXI).  Compl. ¶¶ 18, 989-97, 1030-37; ECF No. 97-1 at 21-25. A plaintiff asserting a claim of common law fraud under New York law must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) [that] such reliance caused damage to the plaintiff." Soley v. Wasserman, 823 F. Supp. 2d 221, 235 (S.D.N.Y. 2011) (quotations & citation omitted).  "[I]n federal court, fraud must be plead with particularity in accordance with Fed. R. Civ. P. 9(b)[.]"  AIU Ins. Co. v. Olmecs Med. Supply, Inc., No. 04 Civ. 2934 (ERK) (RML), 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005).  On the first element of fraud, Plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Gov't Emps. Ins. Co. v. Badia, No. 13 Civ. 1720 (CBA) (VMS), 2015

13

WL 1258218, at *14 (E.D.N.Y. Mar. 18, 2015) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)) (adopting report & recommendation).

Here, Allstate has alleged that Defaulting Defendants, "through false and misleading statements, created and engaged in a fraudulent scheme that billed [Allstate] for reimbursements to which they were not eligible." Allstate Ins. Co. v. Avetisyan, No. 17 Civ. 4275 (RPK) (RML), 2021 WL 1227625, at *5 (E.D.N.Y. Mar. 5, 2021), R&R adopted, 2021 WL 1224101 (Mar. 31, 2021). Allstate alleges the claims submitted for patient examinations were not performed as represented and charged in violation of the applicable Fee Schedule. Compl. ¶¶ 1-2, 7-8, 109, 138, 550-577, 772. Allstate also alleges that Defaulting Defendants intentionally misrepresented that the Compounded Products prescribed by Delacruz-Gomez to patients of Life Health Care and dispensed by Direct Rx were medically necessary and were tailored to the patients' individual needs. Compl. ¶¶ 2, 5, 9-15, 205-18, 286-300, 301-326, 379-425. The complaint attaches as exhibits a chart that lists claims submitted by Life Health Care under allegedly fraudulent CPT codes, Exh. 5, ECF No. 1-7, as well as lists of allegedly fraudulent No-Fault claims paid out by Allstate to Direct Rx Pharmacy and Life Health Care, respectively, Exh. 23, ECF No. 1-25; Exh. 28, ECF No. 1-30.

The complaint alleges that all of these claims were fraudulent because they sought reimbursement for services not rendered, costs not actually incurred, or

prescriptions that were not medically necessary.  See Compl. ¶¶ 202-18, 575-76, 640-49, 678-84, 720-32, 769-77, 787(d), (i).  The heightened pleading standard for fraud claims requires plaintiffs to identify the allegedly fraudulent statement, the speaker, and when it was made, with particularity.  See Fed. R. Civ. P. 9(b).  The complaint and attached exhibits meet this standard.  See, e.g., Gov't Emps. Ins. Co. v. Alrof, Inc., No. 11 Civ. 4028 (SLT) (RER), 2013 WL 9600668, at *5 (E.D.N.Y. July 19, 2013) ("Plaintiffs set forth examples and described in detail how the Retail Defendants submitted charges for items more expensive than those actually dispensed, if dispensed at all.  Plaintiffs have also supplied a schedule detailing when the Retail Defendants' claims were paid.  Accordingly, Plaintiffs have pled the fraud with sufficient particularity[.]") (citations omitted), R&R adopted sub nom., Gov't Emps. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc., 2013 WL 5209415 (Sept. 13, 2013); Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 373 (E.D.N.Y. 2012) ("Allstate attaches to its Complaint a series of charts that include each of the charges submitted by the defendants that it believes were fraudulent. The charts detail the entity that submitted each claim, as well as the corresponding claim number, the year Allstate paid the claim, and the amount paid by Allstate. Such information clearly directs defendants to the specific misrepresentations Allstate is alleging.  Under the circumstances, the specificity requirement of 9(b) requires no more[.]") (citations omitted).

Allstate alleges that Defaulting Defendants knew that the claims submitted were false claims.  Compl. ¶¶ 995, 1035.  The complaint also alleges that Defaulting Defendants had motive and opportunity to commit fraud through Defaulting Defendants' realization of direct economic benefit through fraudulent billing practices and their relationship with Direct Rx.  Id. ¶¶ 19, 137, 323, 326, 726, 787(d), (i); see Gov't Emps. Ins. Co. v. Erlikh, No. 16 Civ. 7120 (DLI) (SJB), 2019 WL 1487576, at *6 (E.D.N.Y. Feb. 28, 2019) (alleging that the Defaulting Defendants, along with various providers, "intentionally made . . . false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges"), R&R adopted, 2019 U.S. Dist. LEXIS 57885 (Mar. 31, 2019).  These allegations are sufficient to infer an intent to defraud.  See, e.g., Gov't Emps. Ins. Co. v. Spectrum Neurology Grp., LLC, No. 14 Civ. 5277 (ENV) (SMG), 2016 WL 11395017, at *3 (E.D.N.Y. Feb. 17, 2016) ("This [intent] requirement may be satisfied by alleging facts that show that defendants had both motive and opportunity to commit fraud.") (quotations omitted), R&R adopted sub nom., Gov't Emps. Ins. Co. v. Premier Prof'l Servs., LLC, 2016 WL 10710999 (Mar. 18, 2016); Allstate Ins. Co. v. Lyons, No. 11 Civ. 2190 (PKC) (VVP), 2015 WL 13735435, at *4 (E.D.N.Y. Mar. 10, 2015) ("Since the purpose of submitting these false claims was to obtain funds the defendants were not entitled to obtain,

there was an unmistakable intent to have the plaintiffs rely on the false claims."),
R&R adopted, Order dated Mar. 31, 2015.

Allstate also avers that it relied on the facially valid documents that were
submitted by Defaulting Defendants, and therefore, Allstate paid out at least
$40,000 in claims otherwise not reimbursable under the No-Fault law.  See Compl.
¶¶ 17, 782, 787(d), (i).[2]  "These allegations, taken as true on default, satisfy the
fourth and fifth elements of common law fraud by showing a reasonable reliance
on [Defaulting Defendants'] misrepresentations, which caused injury to [Allstate]."
Avetisyan, 2021 WL 1227625, at *6 (citing Erlikh, 2019 WL 1487576, at *7
("Given the lengths the Defaulting Defendants took to conceal the fraudulent bills .
. . and the facially valid bills, it was reasonable for GEICO to rely on the bills
containing the purported misstatements and pay the Defaulting Defendants.");
Spectrum Neurology, 2016 WL 11395017, at *4; cf. State Farm Mut. Auto. Ins.
Co. v. CPT Med. Servs., P.C., No. 04 Civ. 5045 (ILG) (RLM), 2008 WL 4146190,
at *13 (E.D.N.Y. Sept. 5, 2008) (finding in the RICO context that "[t]he harm here
is directly quantifiable—State Farm has alleged that it was harmed when

_____

[2] The complaint alleges Allstate paid out fraudulent claims in excess of
$111,280.38 to Direct Rx Pharmacy and paid out fraudulent claims in excess of
$37,760.11 to Life Health Care, the exact amounts to be determined at trial.
Compl. ¶¶ 787(d), (i).  Plaintiffs' motion for default judgment reports the costs
allegedly associated with only the Defaulting Defendants, bringing the total down
to $44,024.21.  See Seegull Decl. ¶¶ 32-33, Exhs. 2-3.

defendants mailed or caused to be mailed fraudulent claims, and State Farm paid those claims relying on the misrepresentations contained therein")).

Allstate, therefore, has sufficiently alleged each of the elements for a claim of common law fraud against Defaulting Defendants and I therefore respectfully recommend a judgment of liability on its claims of common law fraud.

### 2.    Unjust Enrichment

Allstate seeks a default judgment for unjust enrichment against Defaulting Defendants (Counts XXV and XXX).  Because this Court recommends granting default judgment on the fraud claims against these parties, it is unnecessary to also grant judgment on the unjust enrichment claims.  Although Allstate addresses its belief that Allstate meets the elements of an unjust enrichment claim, ECF No. 97-1 at 25, it "do[es] not address the viability of a claim when other tort liability already exists.  Properly understood, an unjust enrichment claim is intended to protect a plaintiff only in those circumstances where it has no other recourse in tort or contract."  Avetisyan, 2021 WL 1227625, at *6; see Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012) ("[Unjust enrichment] is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").

18

Here, Allstate alleges Defaulting Defendants were unjustly enriched at Allstate's expense, but this claim is based on the same transactions as the claims for common law fraud; thus, they are duplicative.  As a result, Allstate is not entitled to default judgment on its claims for unjust enrichment.  See Hughes v. Ester C Co., 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018) ("Unjust enrichment claims should be dismissed where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed."); Allstate Ins. Co. v. Nazarov, 11 Civ. 6187 (PKC) (VMS), 2015 WL 5774459, at *16 (E.D.N.Y. Sept. 30, 2015) (adopting report & recommendation).  I therefore respectfully recommend denying Plaintiffs' request for default judgment on its unjust enrichment claims, and that the Court dismiss Counts XXV and XXX with prejudice.

### 3.    Declaratory Judgment

Plaintiffs also seek a declaratory judgment relieving them from any obligation to pay the unpaid fraudulent claims made by Life Health Care (Count XXXXIX).  ECF No. 97-1 at 26-27; Compl. ¶¶ 1194-1203.  A party seeking a declaratory judgment must allege that there is a "substantial controversy, between parties with adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752 (2d Cir. 1996) (quotations &

emphasis omitted).  "The controversy must be 'real and substantial' such that declaratory relief will provide 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  Allstate Ins. Co. v. Williams, No. 13 Civ. 2893 (RJD) (JO), 2015 WL 5560543, at *6 (E.D.N.Y. Aug. 28, 2015) (quoting E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 177 (2d Cir. 2001)), R&R adopted sub nom., Allstate Ins. Co. v. Dublin, 2015 WL 5560546 (E.D.N.Y. Sept. 21, 2015). "Declaratory relief is appropriate '(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'"  Id. (quoting Md. Cas. Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971)).  "A court has broad discretion to decide whether to render a declaratory judgment."  Id. (citing In re Orion Pictures Corp., 4 F.3d 1095, 1100 (2d Cir. 1993)).

The Court declines to recommend entry of a declaratory judgment.  Allstate argues that Life Health Care "continues to challenge Allstate's ability to deny [] claims" and that Life Health Care "will continue to pursue payment of those No-Fault claims that presently remain unpaid."  ECF No. 97-1 at 27; see Compl. ¶¶ 1197-98; Seegull Decl. ¶ 61.  It alleges that Life Health Care continues to commence legal actions, including arbitrations.  Compl. ¶ 1199.  Allstate does not

provide information as to how many lawsuits are pending or the dollar amount of pending and outstanding No-Fault claims from Life Health Care.  Allstate does not identify invoices for these outstanding payments, nor does it provide proof of any attempt to collect by Life Health Care.  Neither Life Health Care, nor its sole owner, Delacruz-Gomez, have responded to the complaint, filed an appearance, or responded to the numerous filings made by Allstate.  If Life Health Care was "in fact continuing to seek payment from Allstate, the Court would expect some evidence of such an effort, either through demand letters, [evidence of actual] arbitration[s] or similar proceedings for collections or affirmative litigation brought against Allstate."  See Allstate Ins. Co. v. Abramov, No. 16 Civ. 1465 (AMD) (SJB), 2020 WL 1172697, at *16 (E.D.N.Y. Feb. 21, 2020), R&R adopted, 2020 WL 1166498 (Mar. 11, 2020).  Aside from the conclusory claim that Life Health Care "will continue" to pursue claims and continue to commence legal actions, including arbitrations, Allstate has not pleaded facts to show such filings have been or are being made.

"The absence of such evidence suggests that there is no actual justiciable controversy between the parties over the bills submitted by [Life Health Care] to Plaintiffs, and absent such actual controversy, it would be inappropriate . . . to issue an advisory opinion on a hypothetical dispute[.]"  Abramov, 2020 WL 1172697, at *16 (citing Hamburg-Sud N. Am., Inc. v. Bomix Industria de

21

Embalagens Ltda., No. 15 Civ. 4774 (ARR) (SMG), 2017 WL 9482108, at *5

(E.D.N.Y. Nov. 3, 2017) ("[T]here is no justiciable case or controversy, and no

potential for the declaratory judgment plaintiffs seek to alter defendant's conduct.

According to plaintiffs, the sole purpose of the declaratory judgment they seek is to

limit the potential exposure they may face in an action currently pending in Brazil.

In essence, then, plaintiffs are attempting to litigate a defense they may have to an

action pending in Brazil before this Court."), R&R adopted, 2017 WL 6606896

(Dec. 26, 2017)).[3]  As such, the Court respectfully recommends that declaratory

relief be denied without prejudice.

### 4.    Civil RICO Claims Against Defaulting Defendants

Plaintiffs allege that Defaulting Defendants violated RICO, 18 U.S.C. §

1962(c), through participation in the Direct Rx RICO enterprise (Count VI), and

that Delacruz-Gomez violated RICO, 18 U.S.C. § 1962(c), through the Life Health

---

[3] Moreover, "[i]n recent decisions, the district court denied similar claims for declaratory relief against a defaulting defendant absent information about the status of pending state court collection actions." Gov't Emps. Ins. Co. v. Jacques, No. 14 Civ. 5299 (KAM) (VMS), 2017 WL 9487191, at *9 (E.D.N.Y. Feb. 13, 2017) (collecting cases), R&R adopted, 2017 WL 1214460 (Mar. 31, 2017).  Without a list of actual pending litigations, if they exist, this Court cannot determine whether the "issuance of a declaratory judgment . . . would aid plaintiffs in 'procedural fencing' or a 'race to res judicata,' or would 'encroach on the domain' of any state court tribunals adjudicating any pending suits between plaintiffs and [the defendant]." Gov't Emps. Ins. Co. v. Leica Supply, Inc., No. 11 Civ. 3781 (KAM) (VVP), 2013 WL 1334177, at *3 (E.D.N.Y. Mar. 30, 2013) (citing Chevron Corp. v. Camacho Naranjo, 667 F.3d 232, 245 (2d Cir. 2012)) (adopting report & recommendation as modified).

Care RICO enterprise (Count XII). Compl. ¶¶ 640-49, 678-84. To establish civil liability under RICO, Plaintiffs must show a "substantive RICO violation under 18 U.S.C. § 1962," and that Plaintiffs suffered damages as a result of the violation. See Alrof, 2013 WL 9600668, at *7 (citing UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010)); AIU Ins., 2005 WL 3710370, at *5-6.

"For a § 1962(c) violation, the elements are: (1) the defendant; (2) through the commission of two or more predicate acts; (3) constituting a pattern; (4) of racketeering activity; (5) directly or indirectly participated; (6) in an enterprise; (7) the activities of which affected interstate commerce." Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd., No. 10 Civ. 5611 (JG) (JMA), 2012 WL 1427796, at *7 (E.D.N.Y. Apr. 6, 2012) (citing AIU Ins., 2005 WL 3710370, at *6), R&R adopted, 2012 WL 1432213 (Apr. 25, 2012). Racketeering includes "mail fraud" as defined by 18 U.S.C. § 1341 to encompass using the mail for a scheme to defraud. See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996); Nazarov, 2015 WL 5774459, at *12 (citing 18 U.S.C. § 1961(1)). To state a claim for mail fraud, "a plaintiff must allege, (1) 'the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.'" Nazarov, 2015 WL 5774459, at *12 (quoting Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C., No. 10 Civ. 4341 (ILG) (RML), 2011 WL 5507426,

at *23 (E.D.N.Y. Nov. 9, 2011)).  "To properly allege the 'use of interstate mails,' the plaintiff need not allege that each defendant sent a piece of mail; rather, 'it need only be shown that [each defendant] acted with knowledge that the use of the mails will follow in the ordinary course of business, or that such use can reasonably be foreseen, even though not actually intended.'"  Id. at *12 (quoting Abramovich v. Oliva, No. 11 Civ. 1755 (ERK) (SMG), 2012 WL 3597444, at *10 (E.D.N.Y. Aug. 20, 2012)) (further citation omitted).

The RICO statute defines an "enterprise" as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "The enterprise must also exist 'separate and apart from the pattern of activity in which it engages.'"  D. Penguin Bros. v. City Nat'l Bank, 587 F. App'x 663, 667 (2d Cir. 2014) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)); see Allstate Ins. Co. v. Yehudian, No. 14 Civ. 4826 (JS) (AKT), 2018 WL 1767873, at *8 (E.D.N.Y. Feb. 15, 2018) ("The alleged enterprise through which a pattern of racketeering activity is conducted must be distinct from those persons or entities who stand accused of conducting that racketeering activity.") (quotations & alteration omitted) (collecting cases), R&R adopted, 2018 WL 1686106 (Mar. 31, 2018).  This requirement is met by demonstrating that a "formal legal distinction" exists between the individual defendants and the RICO enterprise.  Cedric Kushner

Promotions, Ltd. v. King, 533 U.S. 158, 165 (2001).  Where the alleged enterprises are corporations and the individual defendants are natural persons, the person-enterprise distinction is met.  See, e.g., Palatkevich v. Choupak, No. 12 Civ. 1682, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) ("[A] natural person named as the defendant 'person' is inherently distinct from a corporate entity 'enterprise' for which he acts as an agent; in such a case, the distinctness requirement is met." (emphasis in original)).

The RICO statute defines a "pattern of racketeering" as "at least two acts of racketeering activity" which occur within ten years of each other.  18 U.S.C. § 1961(5).  "The predicate acts must be related, and either amount to or pose a threat of continuing criminal activity."  Nazarov, 2015 WL 5774459, at *13 (internal citations, alterations & quotations omitted).  "This continuity requirement can be satisfied either by showing a closed-ended pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an open-ended pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed."  Id. (internal citations & quotations omitted).  A closed-ended pattern generally requires that the predicate acts span at least two years.  See Gov't Emps. Ins. Co. v. Scheer, No. 13 Civ. 4039 (SLT) (SMG), 2014 WL 4966150, at *7 (E.D.N.Y. Aug. 18, 2014) (for purposes of default judgment, finding a closed-ended pattern where

25

the enterprise "submitted bills for reimbursement to which it was not entitled over a period exceeding two years"), R&R adopted, 2014 WL 4966137 (Sept. 30, 2014); Allstate Ins. Co. v. Smirnov, No. 12 Civ. 1246 (CBA) (SMG), 2013 WL 5407224, at *6 (E.D.N.Y. Aug. 21, 2013).

Allstate's complaint alleges that Life Health Care is a professional services corporation organized under New York law; that Direct Rx is a domestic business corporation under New York law; and that both are enterprises which affect interstate commerce.  Compl. ¶¶ 47, 109-10, 865, 957.  Both qualify as RICO enterprises.  See 18 U.S.C. § 1961(4); First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) ("[A]ny legal entity may qualify as a RICO enterprise.").  The complaint also alleges that Life Health Care, a separate legal entity from Direct Rx, participated in the business of the Direct Rx enterprise, and that Delacruz-Gomez is a natural person associated with both enterprises who knowingly conducted and/or participated in the business of these two RICO enterprises.  Compl. ¶¶ 107, 109-12, 640, 645-48, 678-84, 720, 722-25, 727-32, 769-77.  These allegations are sufficient to satisfy RICO's enterprise requirement.[4]  See Abramov, 2020 WL 1172697, at *6; Yehudian, 2018 WL

---

[4] The fact that Delacruz-Gomez is named as the sole officer, director and shareholder of Life Health Care does not defeat the distinctness element between Delacruz-Gomez and the Life Health Care enterprise.  Cedric Kushner Promotions Ltd., 533 U.S. at 163 (citing United States v. Bestfoods, 524 U.S. 51, 61-62 (1998)

1767873, at *8; Allstate Ins. Co. v. Afanasyev, No. 12 Civ. 2423 (JBW) (CLP),

2016 WL 1156769, at *8 (E.D.N.Y. Feb. 11, 2016), R&R adopted, 2016 WL

1189284 (Mar. 18, 2016); Gov't Emps. Ins. Co. v. Gateva, No. 12 Civ. 4236

(MKB) (RML), 2014 WL 1330846, at *7-8 (E.D.N.Y. Mar. 30, 2014) (citing

Hollis Med. Care, 2011 WL 5507426, at *4) (adopting report & recommendation),

as amended, 2014 WL 1843291 (May 8, 2014); Gov't Emps. Ins. Co. v. Damien,

No. 10 Civ. 5409 (SLT) (JMA), 2011 WL 5976071, at *6 (E.D.N.Y. Nov. 3,

2011), R&R adopted, 2011 WL 6000571 (Nov. 29, 2011).

Plaintiffs allege sufficient facts, which are taken as true in the context of a

default, for the Court to find that Delacruz-Gomez engaged in two or more acts

that constitute a "pattern" of mail fraud.  According to Plaintiffs, Defaulting

Defendants participated in a large-scale scheme repeatedly using the U.S. Mail to

submit fraudulent claims containing charges for drugs, medications, treatments,

tests and services that were medically unnecessary between at least 2015 to 2017.

Compl. ¶¶ 202-18, 556-76, 640-49, 678-84, 720-32, 769-77.  Plaintiffs describe the

specific circumstances of the fraudulent scheme, detail Delacruz-Gomez's acts of

creating and submitting fraudulent medical documentation and invoices on behalf

of Life Health Care, as well as Delacruz-Gomez's creating and submitting records

---

("[L]inguistically speaking, the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner.").

and letters in support of medically unnecessary Compounded Products that were mailed to Allstate on behalf of Life Health Care and Direct Rx.  See Compl. ¶¶ 202-18, 556-76, 640-49, 678-84, 720-32, 769-77, Exhs. 5, 14, 19.  Plaintiffs also allege that they suffered significant monetary damages.  See Compl. ¶¶ 787(d), (i), Exhs. 23, 28.  Plaintiffs have sufficiently alleged that Delacruz-Gomez and Life Health Care's schemes constituted mail fraud under the statute.  See Afanasyev, 2016 WL 1156769, at *9 (finding RICO liability where the plaintiffs alleged that the defaulting defendants had mailed "fraudulent and fictitious insurance claims in the process of defrauding plaintiffs over a six year period" and where plaintiffs provided "voluminous billing records" in support thereof); Gateva, 2014 WL 1330846, at *8 ("'Indeed, the very basis of the . . . fraudulent scheme was th[e] submission of fraudulent bills . . . to GEICO by use of the mail'") (quoting Hollis Med. Care, 2011 WL 5507426, at *8); Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C., No. 12 Civ. 4295 (NG) (JO), 2013 WL 5131057, at *6 (E.D.N.Y. Sept. 12, 2013) (adopting report & recommendation); Alrof, 2013 WL 9600668, at *7-8.

I respectfully recommend that the District Court grant Plaintiffs' default judgment motion that Delacruz-Gomez and Life Health Care are liable for violations of RICO, 18 U.S.C. § 1962(c), for a continuing pattern of racketeering activity.

### 5. Civil RICO Conspiracy Claim Against Defaulting Defendants

Plaintiffs also allege Defaulting Defendants violated RICO, 18 U.S.C. § 1962(d), by carrying on a conspiracy to engage in an unlawful enterprise (Count VII). To establish a RICO civil conspiracy claim, the complaint must specifically allege an agreement to commit predicate acts. See Gateva, 2014 WL 1330846, at *8 (citing Morin v. Trupin, 835 F. Supp. 126, 135 (S.D.N.Y. 1993)); Allstate Ins. Co. v. Williams, No. 13 Civ. 2893 (RJD) (JMA), 2014 WL 6900121, at *8 (E.D.N.Y. Dec. 5, 2014) (adopting report & recommendation). Plaintiffs must also sufficiently allege Defaulting Defendants "understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses." Gateva, 2014 WL 1330846, at *8 (citing Morin, 835 F. Supp. at 135) (internal quotations omitted); see Infinity Health Prods., 2012 WL 1427796, at *7. This requirement can be met by "showing that each defendant 'possessed knowledge of only the general contours of the conspiracy.'" Infinity Health Prods., 2012 WL 1427796, at *7 (quoting Hollis Med. Care, 2011 WL 5507426, at *10); cf. U.S. v. Pizzonia, 577 F.3d 455, 462 n.4 (2d Cir. 2009) (stating that the government need only show that a criminal RICO defendant "know[s] the general nature of the conspiracy and that the conspiracy extends beyond [his] individual role" (internal quotations & citation omitted)).

Plaintiffs allege that Defaulting Defendants conspired with co-defendant Yaguda by agreeing to conduct the affairs of Direct Rx through a pattern of ongoing activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, by preparing and submitting fraudulent insurance claim documents, including NF-3 forms, to Allstate.  Compl. ¶¶ 870-76.  Allstate's complaint establishes that Defaulting Defendants had actual knowledge of wrongdoing engaged in by and through the Direct Rx enterprise as evidenced by Delacruz-Gomez's prescription of medically unnecessary and unwarranted Compounded Products to patients of Life Health Care through the use of rubber stamps containing predetermined ingredients and quantities on the same day of the patients' initial examinations.  Compl. ¶¶ 178-79, 286-89, 379-415.  The Defaulting Defendants' knowledge of wrongdoing is also shown through the submission of boilerplate letters of medical necessity that were authored or signed by Delacruz-Gomez for patients of Life Health Care for the purpose of misrepresenting the medical necessity of prescriptions of Compounded Products to Allstate.  Compl. ¶¶ 51-53, 73, 202-18, 389-96.

These allegations are sufficient to meet the "relatively low [civil RICO conspiracy allegation] standard."  See Williams, 2014 WL 6900121, at *8 (quoting Hollis Med. Care, 2011 WL 5507426, at *10) (granting Allstate's motion for default judgment as to RICO conspiracy claim because allegations showed that

defendant "knew the general contours of the ongoing scheme: he had knowledge that the scheme would ultimately result in the mailing of fraudulent bills, and agreed with [co-defendant] to bill based on a predetermined fraudulent protocol that would cause the submission of fraudulent billing to Allstate."); see also Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C., No. 15 Civ. 3670 (FB) (VMS), 2017 WL 1133282, at *14 (E.D.N.Y. Feb. 21, 2017) (granting motion for default judgment on RICO conspiracy claim based on allegations that defendants "agreed to conduct or participate in the conduct of the RICO enterprises' affairs through a pattern of ongoing activity consisting of repeated violations of the federal mail fraud statute . . . by submitting or causing to be submitted numerous fraudulent bills seeking payment from GEICO."), R&R adopted, 2017 WL 1131901 (Mar. 24, 2017).

I respectfully recommend that the District Court grant Plaintiffs' default judgment motion that Defaulting Defendants are liable for a violation of RICO, 18 U.S.C. § 1962(d), for conducting a RICO conspiracy.

## III.   DAMAGES

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations related to damages are not. See Cement & Concrete Workers, 699 F.3d at 234; First Mercury Ins. Co. Inc. v. Schnabel Roofing of Long Island, Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL

883757, at *1 (E.D.N.Y. Mar. 11, 2011).  A hearing on damages may be held but is not mandatory.  See Cement & Concrete Workers, 699 F.3d at 234.  In this case, the Court need not hold a hearing because it can determine damages based upon Plaintiffs' submissions supported by sworn statements.

### A.    RICO Damages

Allstate has submitted spreadsheets itemizing each payment made by Allstate to the Life Health Care and Direct Rx enterprises on account of the fraudulent billings, along with a declaration from Mr. Seegull detailing how the damages were calculated based upon payment records maintained by Allstate in the ordinary course of business.  See Seegull Decl. ¶¶ 48-55, Exhs. 2-3.  These spreadsheets list the claim numbers submitted by each enterprise, the dates of payment, the payee and the amounts paid.  Allstate seeks RICO damages based upon the itemized payments given to Defaulting Defendants.  Allstate is not seeking to recover attorney's fees and costs, or any pre- or post-judgment interest, costs or disbursements.  ECF No. 97-1 at 33 n.6.

Allstate requests treble damages from Defaulting Defendants for Counts VI and VII (Direct Rx enterprise) and treble damages from Delacruz-Gomez for Count XII (Life Health Care enterprise).  Compl. at 238-39, 241.  Pursuant to 18 U.S.C. § 1964(c), an injured party is automatically entitled to recover "threefold the damages" it sustains for a RICO violation.  Indeed, "[c]ourts have found that an

award of treble damages is appropriate in No-Fault billing cases involving RICO fraud claims, even in the context of a default." <u>Afanasyev</u>, 2016 WL 1156769, at *12 (collecting cases).

The damages calculations submitted by Allstate are sufficient evidence on which to award RICO damages. <u>See, e.g.</u>, <u>Allstate Ins. Co. v. A & F Med. P.C.</u>, No. 14 Civ. 6756 (ENV) (RLM), 2019 WL 7842516, at *6 (E.D.N.Y. Sept. 11, 2019) (granting motion for default judgment and awarding damages based on the declaration of Allstate's Special Investigations Unit Analyst establishing the amounts paid by Allstate in connection with the defaulting defendants' claims for No-Fault reimbursement for medically unnecessary and fraudulently billed medical services), <u>R&R adopted</u>, 2020 WL 132387 (Jan. 13, 2020); <u>Gov't Emps. Ins. Co. v. Mayard</u>, No. 15 Civ. 4077 (CBA) (RML), 2019 WL 3716069, at *1, *5 (E.D.N.Y. May 9, 2019) (granting motion for default judgment and awarding damages based on declaration of GEICO's claims manager representing payments made by GEICO for false and fraudulent claims submitted by the defendants for "medically unnecessary tests and procedures" performed pursuant to unlawful referrals), <u>R&R adopted</u>, 2019 WL 4141030 (Aug. 30, 2019); <u>Williams</u>, 2014 WL 6900121, at *2, *9 (awarding Allstate "damages from the defaulting defendants for claims that Allstate paid where the services were either never conducted, improperly billed by independent contractors, medically unnecessary, or exaggerated" based on

declaration from Allstate Special Investigations Unit Field Analyst).  Therefore, the Court respectfully recommends that Allstate be awarded treble damages of $132,073.23, as follows:

| Count(s) | Defendant(s) | Enterprise | RICO Damages | Treble Damages |
|----------|-------------|-----------|--------------|----------------|
| VI, VII | Delacruz-Gomez, Life Health Care | Direct Rx | $38,990.27 | $116,970.81 |
| XII | Delacruz-Gomez | Life Health Care | $5,034.14 | $15,102.42 |

## B.    Joint and Several Liability

Allstate also seeks to hold Defaulting Defendants jointly and severally liable for all of the fraudulent billing submitted by the Direct Rx enterprise (Counts VI and VII).  See ECF No. 97-1 at 31-32.

"Joint and several liability is rooted in the principle that a wrongdoer is liable for the reasonably foreseeable acts of his fellow wrongdoers[.]"  United States v. Philip Morris USA, 316 F. Supp. 2d 19, 26 (D.D.C. 2004) (citing Paper Sys. Inc. v. Nippon Paper Indus. Co., 281 F.3d 629, 633 (7th Cir. 2002)). Although the Second Circuit has not yet directly addressed joint and several liability in a civil RICO action, see Nazarov, 2015 WL 5774459, at *17, "every circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations."  Yehudian, 2018 WL 1767873, at *18 (alteration omitted)

(quoting Philip Morris USA, 316 F. Supp. 2d at 27).  Further, "[c]ourts in this district 'routinely find defendants jointly and severally liable in relation to civil RICO claims.'"  See, e.g., id. at *18 (collecting cases) (citations omitted).  Because the alleged RICO scheme involves "repeated fraudulent acts by multiple defendants, plaintiffs are entitled to recover once for every fraudulent act, and each defendant who participated in the fraudulent act is jointly and severally liable for the amount of damage caused."  Williams, 2014 WL 6900121, at *10 (citations & quotations omitted).

A Defaulting Defendant can be jointly and severally liable only for the damages arising out of the RICO enterprise with which it or she was associated.  See, e.g., Nazarov, 2015 WL 5774459, at *17 ("[T]he Subject Defendants . . . participated in RICO enterprises to submit numerous fraudulent bills to Plaintiffs, such that each defendant contributed to the RICO Enterprise of which it was a part, and should be held jointly and severally liable with the other participants in the particular scheme.").  The Court finds that Defaulting Defendants are "jointly and severally liable for the entire amount of damages resulting from the RICO violations associated with each of the respective schemes that they participated in."  Allstate Ins. Co. v. Abutova, No. 13 Civ. 3494 (ARR) (LB), 2017 WL 1185222, at *9 (E.D.N.Y. Feb. 15, 2017) (citations & quotations omitted), R&R adopted, 2017 WL 1184107 (Mar. 29, 2017).  Thus, Delacruz-Gomez and Life Health Care are

35

jointly and severally liable for $116,970.81, the treble damages stemming from the Direct Rx enterprise (Counts VI and VII).

### C.    Common Law Fraud Damages

Allstate seeks $5,034.14 in common law fraud damages against the Defaulting Defendants, which represents the actual damages from the fraudulent billing associated with the Life Health Care enterprise (Count XXI).  See ECF No. 97-1 at 29-30, 33.  As Plaintiffs have demonstrated liability on their fraud claims, they are entitled to damages in the entire amount they paid to Defaulting Defendants, unless they are already recovering those same damages under RICO. See Williams, 2014 WL 6900121, at *10 (finding that "separate awards under RICO and state law would be duplicative"); Gov't Emps. Ins. Co. v. Esses, No. 12 Civ. 4424 (RJD) (VVP), 2013 WL 5972481, at *10 n.3 (E.D.N.Y. Nov. 5, 2013) (adopting report & recommendation).  New York law provides for joint and several liability for fraudulent acts where defendants acted jointly or concurrently to produce a single injury.  See Parkway Med. Care, 2017 WL 1133282, at *14; Infinity Health Prods., 2012 WL 1427796, at *10.  Plaintiffs allege that Delacruz-Gomez submitted or caused to be submitted fraudulent claims through his company, Life Health Care.  As such, Delacruz-Gomez is jointly and severally liable with Life Health Care for the common law fraud damages on Count XXI.

See <u>A & F Med.</u>, 2019 WL 7842516, at *8 (E.D.N.Y. Sept. 11, 2019) (citing

<u>Parkway Med. Care</u>, 2017 WL 1133282, at *15).

As Plaintiffs note, the requested $5,034.14 in common law fraud damages

against the Defaulting Defendants for fraud overlaps with $5,034.14 out of the

$15,102.42 sought against Delacruz-Gomez for the RICO violation.  <u>See</u> ECF 97-1

at 33 & nn.7-8.  But Plaintiffs' chart at ECF No. 97-1 at 33 appears to seek

$5,034.14 from Life Health Care separate and apart from the $15,102.42 sought

from Delacruz-Gomez.  "Since the award of damages under RICO wholly

compensates the plaintiffs and the award having been trebled, the plaintiffs are not

entitled to separate awards of damages on the claims for common law fraud and

unjust enrichment."  <u>Esses</u>, 2013 WL 5972481, at *10 n.3.  As such, this Court

respectfully recommends that the Court decline to award any additional damages

based on common law fraud, but recommends that Life Health Care be held jointly

and severally liable with Delacruz-Gomez for $5,034.14, the actual damages from

the Life Health Care enterprise.

## IV.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends that

Plaintiffs' motion for default judgment be granted, in that: (1) default judgment on

liability be entered against all Defaulting Defendants as to Plaintiffs' common law

fraud claims (Counts XVI and XXI); (2) default judgment on liability be entered

against Defaulting Defendants as to Plaintiffs' RICO claims (Counts VI, VII and XII); (3) Defaulting Defendants be held jointly and severally liable for RICO damages relating to the Direct Rx enterprise (Counts VI and VII); and (4) Life Health Care be held jointly and severally liable with Delacruz-Gomez for the actual damages relating to the Life Health Care enterprise (Count XXI). Accordingly, this Court respectfully recommends that Plaintiffs be granted relief in the amount of $132,073.23, to be divided in accordance with the following:

A.    Delacruz-Gomez and Life Health Care be jointly and severally liable for RICO damages in the amount of $116,970.81 for Counts VI and VII, which represents trebled damages of $38,990.27 for the fraudulent claims submitted through the Direct Rx enterprise; and

B.    Delacruz-Gomez be liable for RICO damages in the amount of $15,102.42 for Count XII, which represents trebled damages of $5,034.14 for the fraudulent claims submitted through the Life Health Care enterprise, $5,034.14 of which Life Health Care is jointly and severally liable for Count XXI.

This Court also respectfully recommends that Plaintiffs' motion for default judgment on its unjust enrichment claims (Counts XXV and XXX) be denied and those causes of action be dismissed; and that Plaintiffs' motion for default judgment on its declaratory judgment claim against Life Health Care (Count

XXXXIX) be denied with leave to replead within 30 days of the adoption of this report and recommendation, if it is adopted.

## V.    OBJECTIONS

This report and recommendation will be filed electronically.  The Court will mail a copy of this report and recommendation to: Rafael Antonio Delacruz-Gomez, M.D., 1570 McDonald Street, Apt 2B, Bronx, NY 10461; Rafael Antonio Delacruz-Gomez, M.D., 1570 McDonald Street, Apt 2W, Bronx, NY 10461; Rafael Antonio Delacruz-Gomez, M.D., 2032 Turnbull Avenue, Bronx, NY 10473; and Life Health Care Medical, P.C., 852 Avenue Z, Brooklyn, NY 11235.

Written objections to this report and recommendation must be filed with the Clerk of the Court within the time permitted after service of the report and recommendation, and in accordance with the Individual Rules of the District Judge.  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this report and recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see also Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated:      Brooklyn, New York
            August 13, 2021

                                        _Vera M. Scanlon_
                                        VERA M. SCANLON
                                        United States Magistrate Judge